UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FINGAL E. JOHNSON,

    Plaintiff,

  v.

BILL MARTIN, *et al.*,

    Defendants.
_____/

MICHAEL JENKINS, *et al.*,

    Plaintiffs,

  v.

BILL MARTIN, *et al.*,

    Defendants.
_____/

Case No. 2:00-CV-75

Hon. Richard Alan Enslen

Case No. 1:01-CV-515

**OPINION**

    This matter is before the Court on class Plaintiffs and Defendants' Motions for Reconsideration of this Court's December 12, 2005 Opinion, Order, Injunction, and Partial Judgment ("Ruling"). Plaintiffs make a variety of pleas for reconsideration, to wit: the Court's Ruling leaves the impression that an equal protection claim remains and, for clarity, should be ordered resolved; the Court erroneously found Defendants met the *Turner* test[1]; and that a hearing is necessary. Defendants seek to reconsider the injunctive relief granted against it and concurs that Plaintiffs' equal protection claim has been disposed of.[2]

---

[1] *See Turner v. Safley*, 482 U.S. 78 (1987).

[2] The Court will grant the parties' Motion for Reconsideration on this ground without discussion and enter a Judgment clarifying that Plaintiffs' equal protection claim has been dismissed

**I.     CONTROLLING STANDARDS**

"[M]otions for reconsideration that merely present the same issues ruled upon by the Court shall not be granted." W.D. MICH. LCIVR 7.4(a). To prevail on such a motion, a movant must show "not only [] a palpable defect by which the Court and the parties have been mislead, but also show that a different disposition of the case must result from correction thereof." *Id.* Oral argument is not required to decide a motion for reconsideration. W.D. MICH. LCIVR 7.4(b).

**II.    DISCUSSION**

The Court readily admits it is puzzled by the principal ground asserted in Plaintiffs' Motion for Reconsideration. That is, should Plaintiffs prevail on their Motion—having the Court so find that Defendants did not meet the *Turner* test—there is no need for the Court to change the remedial provisions of its Ruling. The futility of Plaintiffs' Motion can be explained by careful review of the Court's Ruling.

The Opinion portion of the Court's Ruling was separated into sections and subsections. Sections A, B, and C granted Defendants qualified immunity on Plaintiffs' claims under the First Amendment, Due Process Clause, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") respectively. At this point, the only relief available to Plaintiffs was in equity, *Flagner v. Wilkinson*, 241 F.3d 475, 484 (6th Cir. 2001), which the Court addressed in section D.

As for Plaintiffs' First Amendment and due process claims in equity, the Court found that Defendants met their burden under the *Turner* test and denied injunctive relief. On Plaintiffs' RLUIPA claim, however, because Congress heightened the level of scrutiny this Court must employ, the Court found injunctive relief appropriate and enjoined Defendants from banning all Melanic

---

and that this case is terminated.

Literature. Therefore, even if the Court were to revisit its Ruling and find in Plaintiffs' favor (*i.e.*, that Defendants did not satisfy the *Turner* test), the end result would remain exactly the same. Simply stated, Defendants are currently enjoined from banning Melanic Literature under RLUIPA and enjoining them again under the First Amendment or the Due Process Clause would be *dicta*, an exercise the Court is counseled to avoid. *See Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 765 n.1 (6th Cir. 1985) (JJ. Krupansky, Edwards, Jr., Keith, and Jones dissenting); *H.S.D. Co. v. Kavanagh*, 191 F.2d 831, 843-44 (6th Cir. 1951). Therefore, because Plaintiffs cannot show that a different disposition of the case must result, W.D. MICH. LCIVR 7.4(a), the Court will not review its Ruling that Defendants met the *Turner* test and Plaintiffs' Motion for Reconsideration is denied on that ground.

As for Plaintiffs' request for hearing, Plaintiffs desire a hearing to determine what Melanic Literature is permitted into MDOC facilities pursuant to RLUIPA.[3] In this regard, the Court's Ruling sets a minimum level of conduct that Defendants are required to observe. At the very least, Defendants cannot totally ban Melanic Literature from Michigan Department of Corrections ("MDOC") institutions. As for what specific Melanic Literature is permitted under the injunction, the Court cannot—given the mandate of 18 U.S.C. § 3626—answer that question. To do so would necessarily entangle the Court in the business of prison administration more than Congress allows. So long as Defendants are making a good faith determination when they screen Melanic Literature to assure only prohibited materials are prevented entry into MDOC institutions, they are obedient to the Court's Ruling. Therefore, the Court will deny Plaintiffs' Motion on this ground.

---

[3] Plaintiffs' plea for a hearing is actually twofold. They also request an evidentiary hearing as to whether Defendants met the *Turner* test; however, as discussed earlier a hearing on that score is unnecessary.

Turning to Defendants' Motion for Reconsideration, their chief objection to the Court's Ruling is that an injunction should not have issued against them since they had already decided to prevent institutions from totally banning Melanic Literature.[4] In other words, Defendants believe their voluntary cessation of their total ban of Melanic Literature mooted the need for an injunction.

For this contention, Defendants rely solely on *Dana Corp. v. Celotex Asbestos Settlement Trust* and submit that "[b]ecause injunctive relief looks to the future, and is designed to deter rather than punish, relief will be denied if the conduct has been discontinued on the ground that the dispute has become moot and does not require the court's intervention." 251 F.3d 1107, 1119 (6th Cir. 2001) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2942 (2nd ed. 1995)). The *Dana* court continues to quote—language which is conspicuously absent from Defendants' Motion—Professors Wright, Miller, and Kane:

> But the court must be satisfied that there is no reasonable expectation of future injurious conduct . . . . Since a court must take into consideration the likelihood of a recurrence of the problem, plaintiff need not rely solely on defendant's assurances that it will not engage in the offensive conduct at some later date.

*Id.* Furthermore, courts are to be wary of efforts to defeat injunctions by those who claim to have voluntary ceased their injurious conduct, "especially when abandonment seems timed to anticipate

---

[4] MDOC Director Dan Bolden issued a January 12, 2000 memorandum wherein he advised that:

> Each facility should get a current roster of Melanics. Prisoners should be given seven (7) business days to turn in [Melanic] literature and materials. In addition, they should have the opportunity to renounce their affiliation/change affiliation at the time of the interview. Picking up literature should be handled carefully (items like Qurans and Bibles should be left alone). Group worship materials such as the Melanic flag should be removed from the facility and disposed of with care to avoid a negative/violent response . . . .

Defendants' mootness argument is premised on this memorandum.

suit, and there is probability of resumption." WRIGHT, MILLER, & KANE at § 2942 (quoting *United States v. Oregon State Med. Soc'y*, 343 U.S. 326, 333 (1952)); *see also Rubbermaid, Inc., v. F.T.C.*, 575 F.2d 1169, 1172 (6th Cir. 1978) ("it is likewise well-established that discontinuance of past illegal practices does not necessarily render moot a controversy over an injunction against similar future actions.") (citing *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 202-03 (1968); *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953); *Doherty, Clifford, Steers & Shenfield, Inc. v. F.T.C.*, 392 F.2d 921, 927 (6th Cir. 1968); *Carter Products, Inc. v. F.T.C.*, 323 F.2d 523, 531 (5th Cir. 1963)). Thus, the Court finds that because there is a probability of resumption of the total ban on Melanic Literature, and because Defendants' cessation of their total ban conspicuously preceded Plaintiffs' suit, it will deny Defendants' Motion for Reconsideration.[5]

A Judgment consistent with this Opinion shall enter.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>January 30, 2006 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |

---

[5] Defendants also argue mootness under alternate grounds: the absence of injury and that there are less intrusive means under 28 U.S.C. § 3626. The Court considers these arguments to be basically the same mootness argument couched in different contexts and will be denied for the same reason as Defendants' principal mootness challenge.