UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FINGAL E. JOHNSON,

    Plaintiff,

v.

BILL MARTIN, *et al.*,

    Defendants.
                                /

MICHAEL JENKINS, *et al.*,

    Plaintiffs,

v.

BILL MARTIN, *et al.*,

    Defendants.
                                /

Case No. 2:00-CV-75

Hon. Richard Alan Enslen

Case No. 1:01-CV-515

**OPINION**

    This matter is before the Court on class Plaintiffs' Motion for Attorney's Fees and Costs pursuant to 42 U.S.C. § 1988.[1]  The Motion has been fully briefed such that the Court discerns no reason to hear oral argument.  W.D. MICH. LCIVR 7.3(d).  For the reasons set forth below, the Court will grant in part and deny in part Plaintiffs' Motion for Attorney's Fees and Costs.

    Plaintiffs brought these consolidated lawsuits under Title 42 of the United States Code, sections 1983 and 2000cc-1, and the First and Fourteenth Amendments to the United States Constitution to redress Defendants' unlawful interference with their religious freedoms while incarcerated within the

---

[1] Although Plaintiffs' Motion for Attorney's Fees and Costs is correctly titled as their "Motion for Attorneys' Fees and Costs" (in the plural) due to the fact that Plaintiffs were served by multiple counsel, the Court will refer to Plaintiffs' Motion as seeking Attorney's Fees and Costs (in the singular) to avoid confusion in light of favored nomenclature in the case law.

Michigan Department of Corrections ("MDOC"). The parties litigated the case for roughly five and one half years until eventually the matter was ripe for decision on their competing motions for summary judgment.

After the Court resolved the motions and the dust had settled,[2] the Court ultimately found that Plaintiffs were entitled to injunctive relief under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). 42 U.S.C. § 2000cc-1. Accordingly, the Court enjoined Defendants from totally banning Melanic Literature from MDOC institutions and adjudged this case completed.[3] Plaintiffs' Motion for Attorney's Fees and Costs followed on February 28, 2006. Defendants filed their Notice of Appeal of this Court's entry of injunctive relief the next day.

## II.   CONTROLLING STANDARDS

Section 1988(b), provides that:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 *et seq.*], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb *et seq.*], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc *et seq.*], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d *et seq.*], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

---

[2] Both parties moved for reconsideration of the Court's disposition of summary judgment motions. The Court denied both motions. *See Johnson v. Martin*, Nos. 2:00-CV-75 and 1:01-CV-515, 2006 WL 223108 (W.D. Mich. Jan. 30, 2006).

[3] Melanic Literature refers to the five related Melanic writings discussed in the Court's December 7, 2005 Opinion. *See Johnson v. Martin*, Nos. 2:00-CV-75 and 1:01-CV-515, 2005 WL 3312566, at *1 (W.D. Mich. Dec. 7, 2005).

As section 1988(b) makes clear, the authority to award attorney's fees is within the discretion of the district court, *Glover v. Johnson*, 138 F.3d 229, 251 (6th Cir. 1998); however, that discretion is narrowed if a plaintiff prevails on any significant issue in the litigation and no special circumstances would render a fee award unjust. *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989).

Furthermore, because some of the named plaintiffs in this suit are incarcerated, the Court is also mindful of the Prison Litigation Reform Act ("PLRA") and its limitations on the amount that may be awarded under section 1988 to attorneys who litigate lawsuits on behalf of prisoners. The PLRA provides in pertinent part:

> (1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that –
>
> (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and
> (B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation; or
> (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.
>
> (2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.
>
> (3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel.

42 U.S.C. § 1997e(d). With these principles in mind the Court turns to Plaintiffs' Motion for Attorney's Fees and Costs.

**III.    DISCUSSION**

Before considering what amount in this case corresponds to a reasonable attorney's fee award, the Court must consider the various arguments Defendants have raised that work to disentitle or limit Plaintiffs' right to such an award.

**A.    Plaintiffs Have Prevailed in this Case for Section 1988 Purposes**

Defendants maintain that Plaintiffs have not prevailed in a sense contemplated by section 1988, and therefore, are not entitled to attorney's fees. *Buckhannon Bd. & Care Home Inc. v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 600 (2001). The Court disagrees.

In *Buckhannon*, the Supreme Court resolved "[t]he question presented" of whether "a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct" can be considered to have prevailed. *Id.* at 600. The Court held that in such a scenario a plaintiff is not considered the prevailing party. *Id.* Examining its precedent and the legislative history to section 1988, the Court:

> [F]ound that "Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his claims." Our "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." We have held that even an award of nominal damages suffices under this test.

*Id.* at 603-04 (citations omitted). Thus, in order to "prevail," and become eligible for attorney's fees, a party must have obtained a "judicially sanctioned change in the legal relationship of the parties." *Id.* at 605. "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* (emphasis in original). Only "enforceable judgments on the merits and court-ordered consent

decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Id.* at 604.

Defendants assert that the Court's injunction against them does not materially alter their legal relationship with Plaintiffs because the MDOC had already decided to prevent its institutions from totally banning Melanic Literature before the Court entered its injunctive Order. The Court has already considered the propriety of injunctive relief in this case (principally on Defendants' mootness challenge) and found that because there is a probability that Defendants may resume totally banning Melanic Literature, and because Defendants' cessation of their total ban conspicuously preceded Plaintiffs' lawsuit, injunctive relief was warranted. *See Johnson*, 2006 WL 223108, at *2. Thus, the legal relationship between Plaintiffs and Defendants has changed in that—under the force of this Court's Order—Defendants are prohibited from totally banning Melanic Literature. Simply because Defendants claim they have voluntarily ceased their offending conduct does not alter the fact that Plaintiffs have secured a Judgment in their favor or their status as the prevailing party.

In this regard, the Court believes the rule of *Buckhannon* to be of little force and readily distinguishable from the case at bar since the *Buckhannon* Court contemplated a scenario where the plaintiff failed to secure a judgment on the merits but—through fortuitous circumstance—otherwise achieved the result desired by the litigation. *Buckhannon*, 532 U.S. at 600. This sort of situation has been termed virtual or catalytic recovery.[4] In this case, however, Plaintiffs received a valid and enforceable injunction on the merits of their RLUIPA claim, and thus, have prevailed within the

---

[4] Defendants also cite *Chambers v. Ohio Dept. of Human Servs.*, 273 F.3d 690, 693 (6th Cir. 2001) (denying recovery of attorney's fees on catalyst theory). *Chambers* adds no new dimension to Defendants' argument as the Sixth Circuit was deciding the same kind of case as was the *Buckhannon* Court.

meaning of section 1988. *See Andretti v. Borla Performance Indus. Inc.*, 426 F.3d 824, 836 (6th Cir. 2005) (even though the defendant volunteered or consented to injunctive relief, the injunction nonetheless changed the parties' legal relationship).

    **B.**    **The PLRA Limits Plaintiffs' Attorney's Hourly Rate to $169.50**

Defendants also contend that the most Plaintiffs' counsel could charge per hour is $135, based on the limitations imposed by the PLRA, 42 U.S.C. § 1997e(d)(3), and the Criminal Justice Act, 18 U.S.C. § 3006A. The Court disagrees. As Plaintiffs correctly cite, "the maximum allowable hourly rate for attorney fees under the PLRA is $169.50." *Hadix v. Johnson*, 398 F.3d 863, 868 (6th Cir. 2005).

    **C.**    **The Court Will Not Hold Plaintiffs' Attorney's Fees and Costs in Abeyance Pending Appeal**

Finally, Defendants urge the Court to hold Plaintiffs' award of attorney's fees and costs in abeyance pending their appeal of the Court's Order of injunctive relief. For this, Defendants offer no authority for the relief requested and simply suggest that because monies (the amount awarded in attorney's fee and cost) may change hands an extra time if they are successful on appeal, the Court should grant their request pending review by the Sixth Circuit. Although it is true that the filing of a notice of appeal ordinarily divests this Court of jurisdiction to further review issues comprising the substance of the appeal, *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982), the Court "retains residual jurisdiction over collateral matters, including claims for attorney's fees." *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 225 (2nd Cir. 2004) (citing *White v. N.H. Dep't of Employment Sec.*, 455 U.S. 445, 452 n.14 (1982); *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998); and *Terket v. Lund*, 623 F.2d 29, 33-34 (7th Cir. 1980)); *see also Derringer v. Chapel*, 98 Fed. Appx. 728, 735 (10th Cir. 2004); *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d

1303, 1314 n.9 (3rd Cir. 1994). Because this Court has jurisdiction to decide collateral matters such as an application for attorney's fees, and because Defendants have presented no authority for the relief they request, the Court will not hold Plaintiffs' award of attorney's fees and costs in abeyance pending their appeal.

>   D.      $76,012.31 in Attorney's Fees and Costs is Reasonable

In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court discussed at length what ordinarily represents a reasonable attorney's fee and the path the district court should take to arrive at that number.

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.
>
> The district court should also exclude from this initial fee calculation hours that were not "reasonably expended." Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.
>
> * * *
>
> The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained."[5] This

---

[5] The Court's reference to "other considerations" are the twelve factors outlined in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) ((1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience,

factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants—often an institution and its officers, as in this case—counsel's work on one claim will be unrelated to his work on another. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

It may well be that cases involving such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times an hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not

---

reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.)

> authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again the most critical factor is the degree of success obtained. Application of this principle is particularly important in complex civil rights litigation involving numerous challenges to institutional practice or conditions. This type of litigation is lengthy and demands many hours of lawyers' services.
>
> * * *
>
> There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment. This discretion, however, must be exercised in light of the considerations we have identified . . . [and] the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained.

*Hensley*, 461 U.S. at 433-38 (footnotes and citations omitted).

Plaintiffs' attorneys have submitted detailed evidence of the amount of time they spent on each matter in this case. Plaintiffs' lead attorney, Daniel E. Manville, performed the bulk of the work in this case, some 575.4 hours. Also seeking attorney's fees are co-counsel Susanna Peters and Michael J. Steinberg, who reported hours of 119 and 18.4 respectively. Given the nature of this case and the length of the litigation, the Court considers the amount of hours billed and the tasks performed reasonable and necessary to prosecute Plaintiffs' claims. Defendants do not dispute these issues. Thus, the Court begins with a lodestar amount of $120,819.60 in compensable attorney's fees (712.8 hours worked x $169.50 per hour).[6]  *See Hensley*, 461 U.S. at 434.

---

[6] The Court believes the PLRA and its hourly fee limitation applies to Plaintiffs' attorney's fee award even though not all Plaintiffs are prisoners because: (1) only two Plaintiffs are nonprisoners (Plaintiffs Melanic Palace of the Rising Sun and Michael Jenkins, its president); and (2) the primary benefit of this lawsuit inured to the incarcerated Plaintiffs. Furthermore, the Court can divine no intelligent way to differentiate between hours spent handling nonprisoner and prisoner claims since this lawsuit can only rationally be viewed as a whole when concerned with attorney's fees and costs.

Next, the Court evaluates the results obtained in this litigation.  In this regard, Defendants dispute the level of success Plaintiffs accomplished commensurate to the hours Plaintiffs' attorneys expended.  The Court agrees, in part, with Defendants' contention.  This lawsuit cannot be viewed as a series of discreet claims; however, the Court perceives the two primary goals Plaintiffs sought to achieve by initiating this action were to secure the ability to practice their religion and receive compensation for being deprived of that right.  Although it is true Plaintiffs listed numerous claims for relief, the Court believes each can be roughly framed under the ultimate litigation goals of either obtaining unencumbered religious exercise or the receipt of compensatory damages.[7]  From this perspective, Plaintiffs have only achieved half of what they set out to accomplish when this lawsuit was filed.  As was noted above, the Court enjoined Defendants from totally banning Melanic Literature from MDOC institutions but never awarded Plaintiffs compensatory damages.  Thus, Plaintiffs succeeded only in achieving their goal of religious exercise and the Court will reduce Plaintiffs' attorney's fee award by 50% to $60,409.80.  The Court believes Plaintiffs are entitled to their reasonable costs of maintaining this action in the amount of $15,602.51.  Defendants do not dispute this amount.

## IV.    CONCLUSION

Therefore, the Court will grant in part and deny in part Plaintiffs' Motion for Attorney's Fees. An Amended Judgment consistent with this Opinion shall enter.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>May 15, 2006 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |

---

[7] For example, Plaintiffs' request that Defendants replace all confiscated Melanic material and reimburse Plaintiffs' postal costs can be viewed as simply seeking compensatory damages.