UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN
Southern Division

FINGAL JOHNSON, et al.,

    Plaintiff,

-v-                                                  Case No. 2:00-CV-75
                                                    Hon. Richard A.Enslen
BILL MARTIN, et al.,                          Mag. Judge Timothy Greeley

    Defendants.
_____/

MICHAEL JENKINS, et al.,

    Plaintiffs,

-v-                                                  Case No. 1-01-cv-515
                                                    Hon. Robert Holmes Bell
BILL MARTIN, et al.,

    Defendants.
_____/

**PLAINTIFF'S REPLY BRIEF TO**
**DEFENDANTS' RESPONSE BRIEF TO**
**PLAINTIFF'S MOTION TO ENFORCE INJUNCTION**

    In their response, Defendants failed to demonstrate to this Court that the action taken by them to ban all five (5) volumes of religious materials is not the least restrictive as required under Religious Land Use and Institutionalized Person Act (RLUIPA), 42 U.S.C. § 2000cc-1.[1] Courts have held that a prison "cannot meet its burden to prove least restrictive means unless it

---

[1] Section 2000cc-1(a) of the RLUIPA provides that
    No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [42 U.S.C. §§ 1997], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
    (1) is in furtherance of a compelling governmental interest; and
    (2) is the least restrictive means of furthering that compelling governmental interest.

1

demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice."[2]  *Warsoldier v. Woodford,* 418 F.3d 989, 999 (9th Cir. 2005); *Cutter v. Wilkinson*, 349 F.3d 257, 265 (6th Cir. 2003) ("instead of placing the burden of proof on an inmate, RLUIPA throws the burden on prison officials, *see id.* §§ 2000cc-1(a)."), *rev'd on other grds*, 544 U.S. 709 (2005); *Murphy v. Missouri Dept. of Corrections,* 372 F.3d 979, 989 (8th Cir. 2004) ("It is not clear that MDOC seriously considered any other alternatives, nor were any explored before the district court."), *cert. denied*, 543 U.S. 991 (2004).[3]

In considering Plaintiffs' motion it is important for this Court to remember that the STG designation of the Melanics was not based upon any claim that the religious literature advocated racism or violence.[4]  The STG designation was based upon the violent nature of certain members and the belief by MDOC's staff that the leadership of the Melanics had converted the group away from a religious purpose and it was now acting as a gang.[5]  According to then Deputy Director Bolden his action did not ban the religion but it did ban members that were using the religion as a gang.[6]

---

[2] Courts have recognized that the RLUIPA standard poses a far greater challenge than does *Turner v. Safley,* 482 U.S. 78, 90 (1987), to prison regulations that impinge on inmates' free exercise of religion.  *See, e.g., Freeman v. Texas Dept. of Criminal Justice*, 369 F.3d 854, 858 (5th Cir. 2004).

[3] *Cf. Casey v. City of Newport,* 308 F.3d 106, 114 (1st Cir. 2002) ( "[T]he narrow-tailoring test requires the district court to consider whether the regulation challenged on First Amendment grounds sweeps more broadly than necessary to promote the government's interest. That consideration, in turn, cannot be done without some evaluation of the alternative measures put in issue by the parties.").

[4] See attached Exhibit 2, then Deputy Director Dan Bolden's deposition, at 12-14.

[5] See Docket entries cited in Docket 375, Opinion, 12/7/07, at 2 note 1.

[6] At his deposition, Exhibit 2, at 78, Bolden testified:
> It banned members of this group who were also members of the Melanic Islamic Palace of the Rising Sun.  So it gets dicey there.  So we weren't necessarily trying to ban the religion, but the people that were in -- associated with this group also practiced this religion.

No one can argue that controlling racism and violence is not a security concern of prison officials. *See, e.g.*, *Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 989 (8th Cir. 2004), where the court stated:

> The threat of racial violence is of course a valid security concern, but to satisfy RLUIPA's higher standard of review, prison authorities must provide some basis for their concern that racial violence will result from any accommodation of CSC's request. *See Ochs,* 90 F.3d at 296-97 (indicating that the court considered the prior racial violence a relevant part of its decision to defer to prison authorities' security concerns).

However, Defendants' present claim that the religious materials advocate racism and violence is not supported by the fact that these materials were in the prison system for more than twenty years and the MDOC never once during that time period sought to ban these documents for those reasons.[7] It was after the Melanics were designated as an STG that prison staff began to claim that these religious documents advocated violence and racism, which is contradicted by MDOC's Chaplain Burnett:

> Based on my memory, I'm not aware that there is anything that in and of itself poses a threat by its language. If that were true, it would not have been allowed in the institution. And this is a document that was allowed in the institution and was possessed by many prisoners that identify themselves as Melanic. So if there was something in there that we would say, "Ah, this paragraph or this page or this section poses a threat to the safety and security of the good order of the institution," then it would have been rejected on that basis

See attached Exhibit 1, Deposition of Chaplain Burnett, at 29.[8] In none of their pleadings or exhibits filed in this Court have Defendants alleged that the Melanics were declared a STG due to the violence or racism contained in this religious literature. In fact, this Court found that the Melanics

---

[7] In fact, Bolden testified at his deposition in 2003 he had never reviewed any of the five volumes of religious materials being banned. Exhibit 2, at 8-9.

[8] Bolden conceded that there was nothing in the STG policy and the Mail policy that precluded possession of STG materials. Exhibit 2, at 7-10.

were classified as an STG based mainly on an assault of prison staff that occurred at the Chippewa Correctional Facility.[9]

In this matter, Defendants have offered no prior incidents of racism or violence that is directly related to the religious materials. Defendant cite in their briefs to three (3) incidents that alleged demonstrate this racist and violent nature of the religious materials: (1) the "mel-nat is a secuirty threat group symbol and is therefore contraband",[10] (2) "collecton of the 'zakat' has been enforced by inmates pressing other inmates to make these monetary contributions",[11] and (3) "discussion of Nat Turner...."[12]

Prison staff cannot totally ban religious materials just because a group as been designated a security threat group since this is not the least restrictive means.[13] There must be a showing by prison staff that religious materials which was widely distributed and on displace prior to the designation of the group as an STG some how magically violated the good order and security of the prison when only individual possession with no displace would not be allowed for such religious materials. See Exhibit 1, Deposition of Burnett.[14]

---

[9] See Docket 375, Opinion, 12/7/07, at 2 note 1.

[10]

[11]  Id. at 8-9.

[12]  Id. at 9-10.

[13]  Deputy Director Bolden's January 12, 2000 memorandum designating the Melanics as an STG contains no claim that any of the Melanics literature materials advocated violence and racism. These religious materials were ordered picked up for the single reason that these materials belonged to an STG and not that they were advocating violence or racism. Docket 375, Opinion, 12/7/05, at 3 ("In January 2000, Melanics residing outside MDOC institutions began mailing Melanic writings to those incarcerated. MDOC rejected the mailings as violative of MDOC mail policy. MDOC POLICY DIRECTIVE 05.03.118 (effective July 19, 1999) (prohibiting mail 'that is a threat to the security, good order, or discipline of the facility ....')." Even later on when a memorandum was issued by Southwick, again there was no claim by prison staff that these documents advocate violence or racism. Id. at 3.

[14]  On pages 27-34 is found discussions that these 5 documents are "objectionable" because they support an organization that has been banned by the MDOC.

Since it was not the religious materials that was the basis for designating the Melanics as an STG, Defendants are required to show how that an individual member possessing these materials would violate the good order and security and not just that they are Melanic materials. *See, e.g., Borzych v. Frank*, 439 F.3d 388, 391 (7th Cir. 2006). Plaintiffs had a First Amendment right to receive religious materials pertaining to their religion. *Griswold v. Connecticut,* 381 U.S. 479, 482, 85 S.Ct. 1678 (1965) ("[T]he State may not, consistently with the spirit of the First Amendment, contract the spectrum of available knowledge. The right of freedom of speech and press includes not only the right to utter or print, but the right to distribute, the right to receive, the right to read and freedom of inquiry, freedom of thought...."). Courts have recognized that "reading religious literature is a religious exercise. Taking his religious literature was directly, primarily, and fundamentally responsible for rendering that religious exercise effectively impracticable. Therefore taking his religious literature was a substantial burden on his religious exercise of reading religious literature."[15]

By denying Plaintiffs access to any of their religious materials has imposed a substantial burden on the practicing of that religion. *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 761 (7th Cir. 2003) ( "Substantial burden," is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise ... effectively impracticable."). Defendants in this matter have not shown that their decision is the least restrictive means of furthering a compelling government interest.[16]

These religious materials are banned only because the Melanics were declared an STG due to actions of individual members and not the religion. Since Defendants allowed these religious

---

[15] Rowe v. Davis, 373 F.Supp.2d 822, 826 (N.D. Ind. 2005).

[16] *See, e.g., Murphy v. Zoning Comm'n of the Town of New Milford,* 148 F.Supp.2d 173, 187 (D. Conn. 2001).

5

materials in their prisons for approximately 20 years and had not once during that time claimed that these materials advocated violence and racism now, it is a little late in the day to make such a claim. Further, Chaplain Burnett who has been around the MDOC for 20 or more years find nothing in these documents that advocate violence, racism or the good order and security of the prison. See attached Exhibit 1. His only negative comment about these religious materials was that they belonged to the Melanics and this group is now an STG.

Defendants have never presented evidence to this Court that they have considered alternatives to a complete ban to these religious materials. There are least restrictive alternatives that can be used. Plaintiffs' counsel has sought to meet with Defendants to find out what part or portions of these five religious materials were objectionable. Plaintiff Jenkins could eliminate the mel-nat from the 4 or 5 places that it is found in these five (5) volumes. This could be done to the triangle in the two places in this materials. Reference to Zatak could also be eliminated. All of these elimination could be done by Plaintiff Jenkins and the outside Melanic group before mailing them to individual members. Defendants rejected this. This is an example of a reasonable least restrictive alternatives. However, since Defendants are more interested in imposing a total ban, Defendants have refused to try this least restrictive alternative.

Another least restrictive alternative would be to allow such religious materials inside the prison but to impose restriction on its possession and display. Plaintiffs could be restricted to the possession of these religious materials in their cells only and that it not be displayed to others. is one of the least restrictive alterative.

Defendants cannot claim that this would result in an unnecessary expenditure of prison resources since prison staff are required to review each document that is sent to the prison to determine if the objectionable materials is contained in these materials. There are least restrictive

6

alternatives that exist but Defendants have refused to use them.

Defendants are claiming there is no total ban. However, if one prison allows the materials into the prison and every other place does not, there is something wrong with the review process. The best example of a total ban existing is that found in the response to the receipt of religious materials by James Ingram, see Exhibit 8, attached to Motion for Contempt. The 5 religious materials were allowed into the prison. When these materials were brought to the attention of the STG Coordinator, he stated that none of these materials are allowed into the prison. See also Exhibit 4, where all of these religious materials were rejected. How can the reviewing process allow them and then the STG Coordinator say no.

Defendants have raised the issue that Melanic were reprimanded once for seeking to collect tithe. Then Deputy Director Bolden conceded in this deposition that Christian groups have engaged and the same behavior and he has not banned the Bible. Exhibit 2, at 26-27,and 31. If Bolden will not ban the Christian groups for engaging in tithing from its member, under RLUIPA he can not ban Melanics religious materials when it does not mandate inmates to tithe.

The issue of the mel-nat does not apply to all five (5) pieces of religious materials. It is only contained in 2 out of 5. Defendants are using the mel-nat symbol to impose a ban on all five volumes. Defendants have cited to *Harbin-Bey v. Rutter*, 420 F.3d 571 (6th Cir. 2005), to support their claim that under RLUIPA they can impose a total ban due to one item being found objectionable. This case is not applicable since the issue of the application of the RLUIPA was not litigated or decided. RLUIPA requires a higher standard than *Turner v. Safley*, which was the basis of the ruling in *Harbin-Bey v. Rutter*.

Defendants have claimed that Plaintiff has failed to show that Mr. Thompson was found guilty of possession of Melanic materials. See attached as Exhibit 3. In the misconduct report it

7

only states possession of 35 pages of Melanic materials. The materials was turned over to the Inspector Smith and these "page were determined to be that of an MDOC security threat group in nature." This is another demonstration that any Melanic materials possessed by a Plaintiff or class member will be found to be STG materials and confiscated.

 Defendants claim that there is no total ban on Melanic materials since they engage in individual screening whenever such materials is brought to the attention of staff. The review does not mean that a total ban has not been imposed. The reviews that are being held are sham hearings. The holders of the hearing are saying that the Melanics are a STG and any materials relating to this STG is determined to be a violation of the good order and security of the prison. The vindictive or malicious application of otherwise legitimate procedures may deny a particular individual the due process to which he is entitled. *Ciechon v. City of Chicago*, 686 F.2d 511, 517 (7th Cir. 1982); *see also Levenstein v. Salafsky,* 164 F.3d 345, 352 (7th Cir. 1998) ("fundamentally biased process is not due process"). An evidentiary hearing would show that the hearing officers will not find any Melanic materials does not violate the good order and security of the institution since it is materials relating to an STG. See note 14 and text, supra, where Chaplain Burnett stated these 5 documents are "objectionable" because they support an organization that has been banned by the MDOC.

 WHEREFORE, for the reasons stated, this Court should find that Defendants have not sought to use the least restrictive means to ban Melanic religious materials and that the Plaintiffs have raised a material question whether there exist, an unofficial, policy of denying possession by an inmate of any Melanic religious materials and that an evidentiary hearing be held.

Respectfully submitted,

/s/ Daniel E. Manville

Daniel E. Manville (P39731)
Counsel for Plaintiffs
3333 E. Bayaud St., Apt. 903
Denver, Co. 20809
(248) 890-4720
(248) 282-0569 (fax)
dmanville@law.du.edu

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certified that on September 17, 2007, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will serve a copy of the foregoing on the following: Linda Olivieri, Assist. Atty. General, Corrections Division.

/s/ Daniel E. Manville
Daniel E. Manville